79 F.3d 1154
 77 A.F.T.R.2d 96-1428, 96-1 USTC P 50,223
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Romaner J. STRONG, Jr.; Billie R. Strong, Petitioners-Appellants,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 94-70818.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 15, 1996.**
Decided March 19, 1996.
 
 1
 Before: HALL and BRUNETTI, Circuit Judges, and WEINER, District Judge.***
 
 
 2
 MEMORANDUM*
 
 
 3
 Taxpayers Romaner and Billie Strong appeal the memorandum decision of the Tax Court that both assessed a deficiency and denied a refund for the 1985 tax year. On appeal, they argue: (1) that the deficiency assessment was barred by the three-year statute of limitations set forth in 26 U.S.C. § 6501(a); and (2) that they should be awarded a refund on $70,000 of "personal injury" income they erroneously included in their gross income. We reverse on the first issue, and affirm on the second.
 
 I.
 
 4
 The IRS has three years after a taxpayer files his return to file a notice of deficiency on that return. 26 U.S.C. § 6501(a). That period is, under certain circumstances, extended:
 
 
 5
 The running of the period of limitations provided in section 6501 ... shall (after the mailing of a notice under section 6212(a) ) be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and, in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final ), and for 60 days thereafter.
 
 
 6
 26 U.S.C. § 6503(a)(1) (emphasis added).
 
 
 7
 The Strongs argue that the IRS did not mail its notice of deficiency within the three-year period. It is undisputed that the Strongs filed their 1985 return on November 17, 1986 and that the IRS did not mail its notice of deficiency until February 6, 1990, more than three years later. Before the Tax Court, the IRS argued that its notice was nonetheless timely because the Strongs--in response to what they erroneously believed was a valid notice of deficiency for the 1985 tax year--filed a claim in the Tax Court; under the final parenthetical in § 6503(a)(1), the IRS reasoned, the three-year clock was suspended until the Strong's claim was dismissed from the Tax Court (and for 60 days thereafter). This suspension, the IRS concluded, made its February 6, 1990 notice of deficiency timely. The Tax Court agreed. [ER Tabs A & B.]
 
 
 8
 The Strongs assert that the Tax Court misread § 6503(a)(1) by ignoring the first parenthetical, which requires that a valid notice of deficiency be mailed under § 6212(a) before the suspension rule applies. Although the IRS opposed this reading, it changed its position after filing its initial brief before this Court and submitted a supplemental brief agreeing with the Strongs. For that reason, and because our independent reading of § 6503(a)(1) reaches the same result, we REVERSE the ruling of the Tax Court assessing a deficiency against the Strongs for the 1985 tax year.
 
 II.
 
 9
 The Strongs next claim that the Tax Court erred in denying them a refund for the 1985 tax year. In 1985, Romaner Strong sued his former employer, the Saudi Arabian Educational Mission to the United States of America ("the Mission"), for breach of contract and racial discrimination under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 1988, after it fired him from his position as its attorney. The parties settled before trial. The Mission paid Strong $140,000 (with two $70,000 checks) in exchange for a release of all of Strong's claims against it. The settlement agreement was silent as to the allocation of damages for the claims. [See ER Tab E, at 14-15 (citing settlement agreement).] The Strongs included the full $140,000 in their 1985 tax return as "gross income," but now seek a refund on the ground that $70,000 of the award was in settlement of the racial discrimination claims, which are "personal injury" claims excludable from "gross income" under 26 U.S.C. § 104(a)(2).
 
 
 10
 We are not persuaded.[1] While the general definition of "gross income" includes "all income from whatever source generated," 26 U.S.C. § 61(a), it does not include "the amount of any damages (whether by suit or agreement ...) on account of personal injuries or sickness," 26 U.S.C. § 104(a)(2). The taxpayer bears the burden of proving this exemption by showing: (1) that the underlying cause of action was for personal injury; and (2) that he was awarded damages for personal injury. CIR v. Schleier, 115 S.Ct. 2159, 2167 (1995). Strong's breach of contract claim, by its very definition, is not an "action based upon ... tort-type rights" that would warrant § 104(a)(2) exclusion. Id. at 2166. His racial discrimination claims under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 1988, are, however, "personal injury" claims. See United States v. Burke, 112 S.Ct. 1867, 1873 (1992) (noting that "discrimination could [no doubt] constitute a 'personal injury' for purposes of § 104(a)(2) if the relevant cause of action awarded a tort-like conception of injury and remedy," and citing 42 U.S.C. § 1981 as an example of one such action); Metzger v. Commissioner, 88 T.C. 834 (1987), aff'd, 845 F.2d 1013 (3d Cir.1988) (holding that claims under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986 were "personal injury" claims under § 104(a)(2)).
 
 
 11
 Although Strong is thus able to prove that his underlying racial discrimination claims are "actions for personal injury," he is unable to prove that he was awarded any damages on those claims. If the settlement agreement does not disclose on which basis (i.e. for which claims) payment is made, as it does not in this case, we must try to determine "the intent of the payor as to the purpose in making the payment." Metzger, 88 T.C. at 847-48; Stocks v. CIR, 98 T.C. 1, 10 (1992). In divining this intent, we look to the Complaint, the evidence, and the arguments raised in the underlying action. Metzger, 88 T.C. at 848.
 
 
 12
 Strong points to three facts he alleges show that Mission intended $70,000 of the total settlement to be in satisfaction of his racial discrimination claims. First, he notes that Mission asked for Strong to release all his claims against it; since the racial discrimination claims were one half of his lawsuit, Strong argues, at least some of the payment must have been for the discrimination claims. We are not swayed, however, since it seems unlikely that Mission--no matter its intentions--would have asked Strong to release of only some of his claims; we cannot squeeze any intent from Mission's act except the intent to act rationally. Strong next argues that Mission cut two checks--one presumably for his racial discrimination claims, and one for the breach of contract claims. Because neither the settlement agreement nor the notations on the checks themselves draw this distinction, we will abstain as well. Strong finally alleges that one of Mission's attorneys told him that Mission believed that his breach of contract claim was worth only $70,000, [Blue at 6], so that the remaining $70,000 of the settlement must have been, as a matter of logic, for the racial discrimination claims. While this last claim might have merit if proven, we have before us no evidence other than Strong's unsupported assertion as to the attorney's statement; this is insufficient proof.
 
 
 13
 Because Strong has not sustained his burden of proving that any portion of the $140,000 settlement was intended to be in satisfaction of his racial discrimination claims, we AFFIRM the Tax Court's denial of his refund claim.
 
 
 
 **
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 ***
 The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 We are satisfied that we have jurisdiction to hear this claim. A taxpayer seeking a refund has three years from the filing of his return (or two years from the payment of his taxes if it is later) to file a "claim" for a refund. 26 U.S.C. § 6511(a). A claim may be informal and includes the filing of an amended tax return. See Broun v. United States, 91-1 U.S.T.C. p 50,261 (M.D.Ga.1991) (holding that an amended tax return is an informal claim sufficient to preserve a refund suit)
 In this case, the Strongs filed their 1985 tax return on November 17, 1986. They filed an amended form 1040X for the 1985 year requesting a refund on the $70,000 of over-reported income on October 19, 1988--within the three-year time period prescribed by § 6511(a). By doing so, they preserved their right to raise the refund issue in the tax proceeding before us now.