86 F.3d 1174
 77 A.F.T.R.2d 96-1667, 96-1 USTC P 50,255
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Sheldon and Anita DROBNY, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5084.
 United States Court of Appeals, Federal Circuit.
 April 10, 1996.
Rehearing Denied May 29, 1996.
 
 Before NEWMAN, LOURIE and SCHALL, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Sheldon and Anita Drobny appeal from a decision of the Court of Federal Claims dismissing their claim for a tax refund based on various deductions and tax credits denied by the Internal Revenue Service. Johnson v. United States, 32 Fed. Cl. 709 (1995). Because the court did not err in determining that the Drobnys were not entitled to the asserted deductions and tax credits, we affirm.
 
 DISCUSSION
 
 2
 In 1981 and 1982, the Drobnys claimed depreciation deductions, investment tax credits, and energy tax credits on their income tax returns. The claims were based on investments in alleged leveraged leases of solar energy equipment ("the Solargistics investment program").[1] The IRS denied the claims.
 
 
 3
 The Drobnys filed suit for a refund in the Court of Federal Claims. After an 8-day trial, the court denied the Drobnys' request for a refund. In particular, the court held:
 
 
 4
 It was clear from the start that profits were not actually being made, and that profits were not the primary concern of those involved. Plaintiffs failed to prove the existence of a profit motive on their part.... At the time the transaction was entered into, however, an objectively reasonable possibility of making a profit did not exist, based on information available to the principals and to the plaintiffs. Therefore, the transaction lacked economic substance. For these reasons, the Solargistics-Geodesco program was a "sham."
 
 
 5
 Id. at 717. The Drobnys appeal.
 
 
 6
 We review the factual determinations underlying the court's decision that the Solargistics investment program was a "sham" for clear error. Karr v. Commissioner, 924 F.2d 1018, 1023 (11th Cir.1991), cert. denied, 502 U.S. 1082 (1992). However, we review de novo the legal standard applied in determining if the transaction was a "sham." Knetsch v. United States, 364 U.S. 361, 365 (1960); Karr, 924 F.2d at 1023.
 
 
 7
 On appeal, the Drobnys argue that the Solargistics investment program should be treated as a legitimate leveraged lease for federal income tax purposes. In support, the Drobnys argue that the facts of this case are "virtually identical" to the facts in Sacks v. Commissioner, 69 F.3d 982 (9th Cir.1995). In Sacks, the Ninth Circuit held that the taxpayer's leveraged leases for similar solar heating equipment were not "sham" transactions for tax purposes. Thus, the Drobnys argue that we must reverse the court's decision that the Solargistics investment program was a "sham" transaction.
 
 
 8
 We disagree. "To treat a transaction as a sham, the court must find that the taxpayer was motivated by no business purposes other than obtaining tax benefits in entering the transaction, and that the transaction has no economic substance because no reasonable possibility of a profit exists." Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89, 91 (4th Cir.1985). Such a transaction is not entitled to tax recognition. E.g., Karr, 924 F.2d at 1023.
 
 
 9
 Here, the court properly looked to the circumstances surrounding the Solargistics investment program and determined that the transactions were "shams." Although the Drobnys' investments involved solar energy equipment similar to the equipment in Sacks, the underlying transactions were distinguishable. In particular, the court found that Solargistics' investment program was not a genuine multiple party transaction because "[t]here was no established lending institution that provided outside financing, nor were any of the companies involved in the investment program publicly held or recognized as established organizations with experience in operating a business." Johnson, 32 Fed. Cl. at 713. Moreover, the court found that many of the solar heating units that investors purchased were not immediately leased to end users. Id. at 717. The court also found that an investor in the Solargistics investment program could select nonrecourse financing on the deferred portion of the equipment sales price. Id. at 725.
 
 
 10
 We discern no clear error in these findings. If the only expectation of profit is one based on tax deductions and credits, the transaction is not necessarily a sham. Profit is profit, and Congress intended the deductions and credits to induce investment. However, the Solargistics investment program apparently only generated deductions and credits to shelter the Drobnys' other income. The Drobnys did not seem to purchase solar heating equipment to lease to customers for a profit, but rather, paid a fee in exchange for tax benefits. See Rice's Toyota, 752 F.2d at 95. The trial court's findings are not clearly erroneous. We therefore conclude that the court did not err when it found that the transaction had no practical economic effects because no reasonable possibility of a profit existed. Thus, the Solargistics investment program was a "sham" and the Drobnys were not entitled to a tax refund.
 
 
 
 [1]
 The details of the transactions involved in the Solargistics investment program are set forth in the Court of Federal Claims' decision