**Jose ALVAREZ, Jr., pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–351T.**

United States Court of Federal Claims.

Aug. 31, 2000.

---

Jose Alvarez, Jr., San Pedro, CA, plaintiff, pro se.

Robert N. Dorosin, Washington, DC, with whom was Assistant Attorney General Loretta C. Argett, for defendant.

### ORDER

MILLER, Judge.

This case is before the court on cross-motions for summary judgment. Insofar as the complaint seeks a refund of taxes, the issue is whether the taxpayer, who did not pay taxes to the Internal Revenue Service (the "IRS") for the tax year in question—after the IRS erroneously had assessed taxes and penalized him for nonpayment, later admitting that its acts were incorrect and canceling them—is nonetheless entitled to a refund. Defendant maintains that judgment should enter against plaintiff because the United States Treasury never received plaintiff's tax withholdings, which were remitted by the taxpayer's employer directly to the Guam Department of Revenue and Taxation. Argument is deemed unnecessary. Because plaintiff's tax obligation was owed to Guam, not to the United States, and because he has

not paid tax to the United States Treasury, the court rules for defendant.

## FACTS

Jose Alvarez, Jr. ("plaintiff"), was a citizen of the United States and a resident of Guam, a possession of the United States, at the close of taxable year 1995. As required by 48 U.S.C. § 1421i(b) (1994), referred to as the Guam Territorial Income Tax, plaintiff and his spouse filed a Form 1040 income tax return for 1995 with the Department of Revenue and Taxation of the Government of Guam. Plaintiff's tax liability was $2,524.00, with income tax withholdings of $2,132.18 (which had been held and remitted by plaintiff's employer, the United States Postal Service), resulting in a tax bill of $391.82. Plaintiff's 1995 tax return was signed on April 10, 1996. Plaintiff did not file any return with the IRS.

Undaunted by the statutory scheme whereby Guam operates its own tax system predicated on the Internal Revenue Code, on February 24, 1997, the Fresno Service Center (an IRS office) issued a non-filer delinquency notice directed to plaintiff concerning his 1995 income tax return. The declaration of W. Edward Williams, Senior Technical Reviewer with the IRS, states that the Fresno Service Center sent the delinquency notice because the IRS at that time did not have a "Notice Suppression program" in place that would have alerted the Fresno Service Center that the plaintiff had filed in Guam. Decl. of W. Edward Williams, Feb. 25, 2000, ¶ 8. Thus, the Fresno Center was unaware that plaintiff already had filed his 1040 return with the Department of Revenue and Taxation of the Government of Guam and treated plaintiff as a delinquent taxpayer.

Plaintiff, apparently seeking to establish that he had filed in Guam, sent a copy of his original 1995 Form 1040 to the Fresno Center. When this form was received by the Fresno Service Center on April 2, 1997, however, the IRS mistook it for an original income tax return and processed it. According the IRS Certificate of Assessments and Payments for plaintiff's account, the Fresno Service Center issued an assessment against plaintiff not only for plaintiff's income tax liability for the taxable year 1995, but also late penalties, a delinquent filing penalty, and interest.

At this point plaintiff sought assistance from an Assistor of the Service in Guam. The Assistor obtained certification dated July 30, 1997, that plaintiff indeed had filed his original return with the Government in Guam. The Assistor sent this certification to the IRS and requested, on August 19, 1997, that the IRS "abate all assessment [sic] & accruals accordingly." Williams Decl. ¶ 12. IRS personnel eventually corrected plaintiff's tax bill, abating all assessments, penalties and interest. As of November 17, 1997, the IRS Certificate of Assessments and Payments reflected a zero balance for plaintiff for the taxable year 1995.

On October 28, 1998, plaintiff filed a Form 1040X Amended Individual Tax Return. Notably, plaintiff listed the same income that he had listed on his original 1995 1040 Form, but now stated that the tax due on that amount was zero. Plaintiff claimed a refund of $2,524.00.[1] Plaintiff cited various Tax Code provisions, Supreme Court cases, an IRS publication entitled "Your Rights As A Taxpayer," and a decision from the United States Court of Appeals for the Eleventh Circuit interpreting the Fifth Amendment. Plaintiff also argued that, because his income was not "derivative of corporate activity" as defined by decisions interpreting the Corporation Excise Tax Act of 1909, he had " 'zero' income" in the taxable year 1995.

The IRS rejected plaintiff's claim by notice dated December 3, 1998, advising that he could be assessed a penalty of $500.00 for filing a return containing a position deemed to be "frivolous" or to "demonstrate[ ] a desire to delay or impede the administration of Federal Income Tax." On March 29, 1999,

---

1. It is unclear from the calculation on plaintiff's Form 1040X how he arrived at this figure. Plaintiff apparently chose $2,524.00 as the refund amount because it represented the original amount of tax liability on plaintiff's 1995 income before tax credits and payments. However, lines 6, 11, 12, 13, 14, 15, 19 and 21 on plaintiff's Form 1040X are either blank or incorrectly calculated, frustrating any insight into plaintiff's computation of damages.

plaintiff was assessed a penalty of $500.00 for the stated reason that plaintiff's claim that "wages and payments for services aren't income because there was a fair exchange" was frivolous.[2] On June 1, 1999 plaintiff filed suit seeking a "refund ... [of] the $2524.00 plaintiff erroneously paid in 1995 income taxes." Complaint filed June 1, 1999, at 1.

Defendant now moves for summary judgment premised on plaintiff's failure to state a claim and seeks costs of litigation. Plaintiff has submitted a cross-motion for summary judgment on his claim for a refund and similarly seeks costs.

## DISCUSSION

### 1. *Standard for summary judgment*

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c). Having cross-moved, each party bears the burden of demonstrating entitlement to judgment, as well as the absence of issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To demonstrate a genuine dispute of material fact, a party must provide evidence that is more than merely colorable. *See id.* at 324, 106 S.Ct. 2548 (noting evidence may be presented in form of affidavits and need not be admissible at trial). Mere denials or conclusory statements

are not sufficient to demonstrate an evidentiary conflict. *SRI Int'l. v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985). Although entitled to "all applicable presumptions, inferences, and intendments," *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), the non-movant bears the burden of presenting sufficient evidence upon which the trier of fact reasonably could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Should the non-movant fail to present such evidence, summary judgment may be granted in favor of the moving party. *See id.* (stating summary judgment may be granted if the evidence is not "significantly probative").

### 2. *Plaintiff's "refund"*

Although plaintiff's arguments are difficult, if not impossible, to understand,[3] he apparently seeks a "refund" of $2,524.00, to be paid out of the United States Treasury by the IRS. Defendant maintains that the IRS has never assessed any taxes against plaintiff for the taxable year 1995 nor has the IRS ever collected any money from plaintiff relative to that period.[4]

In a tax refund suit, the taxpayer bears the burden of proof and persuasion. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *see also Sara Lee Corp. v. United States*, 29 Fed.Cl. 330,

---

**2.** The IRS' letter assessing the penalty is the source of this quotation. The court notes that there is no record of plaintiff himself having made this argument, neither party having provided any evidence of correspondence by the plaintiff before the March 29, 1999 penalty was assessed. However, because defendant did not assert a counterclaim or set-off, nor otherwise seek recovery of the penalty in its motion, the court does not rule on whether the penalty was assessed appropriately.

**3.** For example, in his complaint, plaintiff argues that he is entitled to judgment "[s]ince Plaintiff [sic] has rejected Plaintiff's claim for refund by claiming that such a claim is frivolous." Compl. ¶ 7.

**4.** The court notes that even though defendant takes the position that plaintiff had not paid any refund to the United States before instituting his refund suit, this case should not be dismissed for

lack of subject matter jurisdiction under *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). In *Flora* the Supreme Court held that the jurisdictional grant of 28 U.S.C. § 1346(a)(1) "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court." *Flora*, 362 U.S. at 177, 80 S.Ct. 630. This rule also applies to refund suits filed in the Court of Federal Claims. *Rocovich v. United States*, 933 F.2d 991, 993–94 (Fed.Cir.1991). *Flora* thus requires full payment of an "assessment," as assessed by the IRS, for jurisdiction over a refund case to arise in the Court of Federal Claims.

The IRS admits (and the evidence shows) that no assessment against plaintiff had been made at the time plaintiff filed this action. Plaintiff could not have paid any assessment before filing, none being due. Thus, the *Flora* rule is inapplicable and subject matter jurisdiction is proper.

334 (1993) (citing cases). In such a suit, the taxpayer must first rebut the presumption of correctness associated with any determination made by the Commissioner of the IRS. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). The taxpayer then must prove the exact dollar amount of the alleged overpayment to which he claims a refund. *Id.* at 440, 96 S.Ct. 3021. In this case plaintiff has failed to meet his burden on either point.

■ It is clear that between February 27, 1997, and November 17, 1997, the IRS incorrectly assessed taxes and penalties against plaintiff, realized its mistake, corrected it, and informed plaintiff that no taxes were due to the United States for 1995. Plaintiff does not dispute these facts. The sheer inanity of plaintiff's claim becomes apparent, however, when it is realized that to state a claim, plaintiff must now dispute this finding of no tax liability. In other words, plaintiff must show that he was incorrectly not assessed any taxes in 1995 by the IRS.

Plaintiff has failed to establish a genuine issue as to his own (non-) tax liability. Indeed, as argued by defendant, plaintiff does not owe the IRS any taxes for the year 1995. Defendant's declarations and other documents establish that no trier of fact could reasonably find that plaintiff owed the IRS any taxes for the taxable year 1995, nor has plaintiff provided evidence to create a genuine issue as to payment.

Plaintiff cannot prove the exact dollar amount of the alleged overpayment, because he did not pay any money to the IRS in 1995.

His taxes were withheld and remitted to the Guam Department of Revenue and Taxation as required by 48 U.S.C. § 1421i. Plaintiff provides no evidence that he ever paid any tax assessment for 1995 to the IRS. Nowhere in any of his filings does plaintiff deny that the IRS did not receive any money from plaintiff. Therefore, defendant is enti-tled to summary judgment on the issue of any refund owing to plaintiff.

Plaintiff makes a number of arguments in support of his motion, which may be addressed briefly. Some seem to be premised on a distinction between an "assessment" and a "demand" for taxes.[5] Plaintiff also argues that he (and other members of the public) have erroneously paid taxes due to IRS intimidation and coercion. Plaintiff then accuses the IRS of not following its own Mission Statement and not attempting to help plaintiff understand his tax responsibilities. Plaintiff also asks for statutory damages[6] and claims that the IRS did not provide "top quality service."

Plaintiff's arguments are as completely unconvincing as they are risible. Not only are many of plaintiff's protests simply not actionable, but they appear calculated to obfuscate the central issue: Plaintiff made no payment to the IRS for the taxable year 1995. In short, plaintiff has ignored the fact that he must show that he paid taxes to the IRS before he can claim a refund. Having provided no evidence of payment, plaintiff's cross-motion for summary judgment is denied.

### 3. *Costs*

Defendant has moved for costs related to this litigation. Defendant has prevailed in this action and, pursuant to RCFC 54(d), is entitled to costs incurred in defending against plaintiff's claim.

### CONCLUSION

Defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

---

5. For example, plaintiff asserts that the IRS "can not [sic] 'demand payment' of a tax *until the tax has been 'assessed,'* so, *obviously,* the tax can not [sic] be 'owed' until an assessment is made and payment 'demanded.'" (Emphasis in original.)

6. Plaintiff seeks recovery under 26 U.S.C. § 7214 (1994). Plaintiff has not provided any evidence that any agent of the IRS has committed any of the offenses listed in that section.