**Remedios E. EBERT, pro se Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–270 T.

United States Court of Federal Claims.

July 12, 2005.

Remedios E. Ebert, pro se, plaintiff.

Steven I. Frahm, Assistant Chief, U.S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, DC, with whom were Eileen J. O'Connor, Assistant Attorney General, and Mildred L. Seidman, Chief, Court of Federal Claims Section, Of Counsel, for defendant.

### OPINION AND ORDER

MEROW, Senior Judge.

This matter is before the court on defendant's motion for summary judgment and pro se plaintiff's submissions, deemed to comprise a cross-motion for summary judgment. At issue is whether a nonresident alien widow of a U.S. serviceman is entitled to a tax refund for benefits initially disbursed in a

taxable form but which were retroactively converted to a nontaxable form. For the reasons set forth below, plaintiff's cross-motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.

### Facts

Plaintiff, a resident of the Philippines, is the widow of a veteran of the U.S. Military. For several years up to and including the first half of 2001, she received compensation under the Survivor Benefit Plan ("SBP"). (Compl. at 1 ¶ 2.) On July 24, 2001, she received notification from the Department of Veterans Affairs ("DVA") that she was entitled to Dependency and Indemnity Compensation ("DIC"), retroactive to February 1, 1999. (Compl. at 5.) Her SBP payments were discontinued as of the end of June 2001, as a result of her award of DIC benefits in a greater amount. (Compl. at 9.) SBP benefits are taxable. 26 U.S.C. §§ 72(n), 871(a)(1) (2000).[1][2] In contrast, DIC payments are exempt from taxation. 38 U.S.C. § 5301(a)(1).[3]

On February 6, 2002, plaintiff wrote to the IRS to request a refund of the taxes withheld from her SBP payments for 1999 and 2000. (Compl. at 2.) In her letter to the IRS on this date, plaintiff "solicit[ed] reconsideration determination (sic) on my claim for refund of tax withheld for 12–31–99 and 12–31–00(sic) ...." (Id.) Plaintiff further stated that "DIC VA award dated July 24, 2001, DIC effective 1999, SBP contributions and tax withheld of 1999 and 2000, be refunded (sic)." (Id.) In support of her claim, she submitted documentation, in the form of IRS Form 1042S,[4] of the amount of tax withheld from her SBP benefits for 1999 and 2000. (Id.) In a second letter to the IRS, this one dated October 14,

---

1. 26 U.S.C. § 72(n) provides: "... [A]ll such amounts [i.e., all payments under programs provided by chapter 73 of title 10, which includes SBP payments] shall be excluded from gross income until there has been so excluded ... an amount equal to the consideration for the contract ...."

2. 26 U.S.C. § 871(a)(1) provides: "[T]here is hereby imposed for each taxable year a tax of 30 percent of the amount received from sources within the United States by a nonresident alien individual as: (A) ... annuities ...."

3. 38 U.S.C. § 5301(a)(1) provides: "Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] shall ... be exempt from taxation ...."

4. Form 1042S is entitled "Foreign Person's U.S. Source Income Subject to Withholding." It details the taxpayer's gross income and the amount of U.S. tax withheld.

2003, she also requested a refund of the taxes withheld during 2001. (Compl. at 8.) With this letter, she included a copy of her 2001 income tax return, completed on Form 1040EZ–NR, to substantiate the amount of tax withheld for 2001. (*Id.*)

On February 27, 2004, plaintiff, acting pro se, filed a complaint with this court to recover the taxes withheld for the years 1999–2001. In her complaint, plaintiff restates her contention that the conversion of her SBP payments into DIC benefits entitles her to a refund of the taxes withheld. (Compl.¶ 2.) Plaintiff is seeking a refund of $4,887.00 ($1,958.40 for 1999, $1,915.20 for 2000, and $1,013.40 for 2001), plus interest. (Answer to Def.'s Prelim. Status Report ¶ 2.) The government moved for summary judgment on March 22, 2005. Plaintiff responded to the government's motion on May 12, 2005 in a submission that is being treated as a cross-motion for summary judgment.

### Standard of Review

Summary judgment is appropriate if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Rules of the Court of Federal Claims ("RCFC") 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment will not be granted "if the dispute is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court must resolve all reasonable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. The burden on the moving party may be discharged if it can show "that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). The burden then shifts to the non-moving party to produce evidence setting forth specific facts which show that there is a genuine

issue for trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "Mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627 (Fed.Cir.1984) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984) (holding that nonmovant "must set out, usually in an affidavit from one with personal knowledge of specific facts, what specific evidence could be offered at trial")).

It is also worth noting that the submissions of a pro se plaintiff, "however inartfully pleaded," are held to less stringent standards than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Forshey v. Principi*, 284 F.3d 1335, 1351 (Fed.Cir.2002). The purpose of this relaxed standard is to ensure that the pro se plaintiff's case is evaluated on the merits and is not dismissed on the basis of technicalities. *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### Discussion

The SBP program, which is administered by the Defense Finance and Accounting Service ("DFAS"), a division of the Department of Defense ("DOD"), provides compensation to surviving spouses and dependents of U.S. servicemen. Under the program, a portion of the serviceman's retirement pay is set aside to provide an annuity for his or her spouse and dependents after his or her death. Such benefits are taxable once the beneficiary has been paid an amount equal to the contributions made by the serviceman. 26 U.S.C. § 72(n).

DIC benefits are administered by the DVA and are available to any spouse or dependent of a veteran who died of a service-related disability. 38 U.S.C. § 1310(a).[5] As is the case with benefits paid out under any program administered by DVA, DIC benefits are not subject to taxation. § 5301(a)(1). In addition, DIC benefits can be awarded retro-

---

5. 38 U.S.C. § 1310(a) provides: "When any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay dependency and indemnity compensation to such veteran's surviving spouse, children, and parents...."

actively: DVA is permitted to award DIC benefits retroactive to the date on which it receives the beneficiary's application for such benefits. 38 U.S.C. § 5110(a).[6]

A beneficiary can receive both SBP and DIC payments under certain circumstances. If a beneficiary under the SBP program becomes eligible for DIC payments, then her SBP payment will be reduced by an amount equal to her DIC benefit. 10 USC § 1450(c)(1).[7] If her DIC benefit exceeds her SBP payment, then she is no longer entitled to receive SBP benefits. *Id.* The reduction in SBP payments becomes effective on the day her DIC payments begin. § 1450(c)(2).[89] As discussed below, a retroactive award has the effect of converting any taxable benefits received during the retroactive period into nontaxable DIC benefits.

Plaintiff contends that she is entitled to a refund of the taxes withheld from her SBP payments for the years 1999–2001. She argues that because the SBP payments were converted to DIC benefits retroactive to February 1, 1999, the tax withheld from that date until her payments were discontinued on June 30, 2001, should be refunded to her. (Compl.¶ 2.) In response, the government makes several arguments: First, the government contends that she has not satisfied the requirements for a tax refund claim. (Def.'s Mot. for Summ. J. at 6.) Second, it argues that payments made under the SBP program are "closed transactions" and thus are not open to future recharacterization for tax purposes. (*Id.* at 7.) Third, the government contends that because plaintiff has failed to prove that she has not already been reimbursed for the taxes withheld under the SBP program, her case must therefore fail. (*Id.*) Fourth, the government suggests that the court look to an unpublished disposition of a similar case for guidance in resolving the instant case. (Def.'s Resp. to Ct.'s May 12, 2005 Order ¶ 7.) Each of these arguments will be addressed in turn.

**A. Whether Plaintiff Has Satisfied the Requirements for a Tax Refund Claim**

■ In a claim for a tax refund, plaintiff bears the burden of proving that she is entitled to a refund and the exact amount of the refund to which she is entitled. *Alvarez v. United States,* 47 Fed. Cl. 590, 593 (2000). The Code of Federal Regulations states that in order to obtain a refund, plaintiff must "set forth in detail the grounds on which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury." 26 C.F.R. § 301.6402–2(b)(1). The regulations further state that a claim will not be allowed unless these formal requirements are satisfied. *Id.* Nevertheless, courts have not held plaintiffs to these rigorous standards in all cases. Instead, courts have generally recognized "informal claims" where the plaintiff "has adequately apprise[d] the Internal Revenue Service that a refund is sought and for certain years." *United States v. Commercial Nat'l Bank of Peoria,* 874 F.2d 1165, 1171 (7th Cir.1989) (citations omitted); *Furst v. United States,* 230 Ct.Cl. 375, 678 F.2d 147 (1982); *see also*

---

**6.** 38 U.S.C. § 5110(a) provides: "[T]he effective date of an award based on an original claim ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."

**7.** 10 U.S.C. § 1450(c)(1) provides: "If, upon the death of a person to whom section 1448 of this title applies, the surviving spouse or former spouse of that person is also entitled to dependency and indemnity compensation under section 1311(a) of title 38, the surviving spouse or former spouse may be paid an annuity under this section, but only in the amount that the annuity otherwise payable under this section would exceed that compensation."

**8.** 10 U.S.C. § 1450(c)(2) provides: "A reduction in an annuity under this section required by paragraph (1) shall be effective on the date of the commencement of the period of payment of such dependency and indemnity compensation under title 38."

**9.** Presumably, DVA reimburses DOD for the amounts paid by DOD as SBP which are thereafter retroactively awarded to plaintiff as DIC by DVA. *See Joosten v. United States,* No. 95–2491, 1996 WL 495547 (D.N.J. June 5, 1996) ("The Veteran's Administration thereafter began paying Disability Indemnity Compensation ("DIC") and reimbursed the Army Finance Center for the survivor benefits paid to plaintiff from 1982 through 1991").

*United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941). There are three components to an informal claim: 1) it must provide the IRS with notice that plaintiff is asserting a right to a refund; 2) it must present the legal and factual bases for the refund; and 3) it must have some written component. *New England Elec. Sys. v. United States,* 32 Fed. Cl. 636, 641 (1995). However, the written component is not required to contain the entirety of the plaintiff's case. The court must examine all of the surrounding facts and circumstances to determine whether plaintiff's submissions constitute an adequate informal claim. *Id.* The relevant inquiry is whether the claim is sufficient to notify the IRS that the party is asserting a right to a tax refund, and to enable the IRS to begin an examination of the claim. *Furst,* 678 F.2d at 151. A plaintiff who is claiming a tax refund must prove her case by a preponderance of the evidence. *Cook v. United States,* 46 Fed. Cl. 110, 116 (2000).

■ Plaintiff has met her burden here. She provided the IRS with notice that she was claiming the right to a refund, in a form which satisfies the written component requirement. In her letter to the IRS dated February 6, 2002, she specifically requested a tax refund for 1999 and 2000. She also requested a refund for 2001 in her letter to the IRS dated October 14, 2003. In addition, plaintiff apprised the IRS of the factual and legal bases for her claimed refund. She states in her February 6, 2002 letter that she is entitled to a refund as a result of the retroactive conversion of her SBP benefits into DIC payments. She submitted copies of her 1999 and 2000 1042S Forms and a copy of her 2001 income tax return to substantiate the amount of her claimed refund. Plaintiff has thus put the IRS on notice that she is asserting a right to a claim and has provided sufficient supporting documentation to enable the IRS to examine the claim. *Furst,* 678 F.2d at 151. She has therefore submitted a cognizable informal claim showing that she is entitled to a refund, and the exact amount to which she is entitled.

## B. Whether SBP Payments Are Closed Transactions and Thus Not Subject to Retroactive Reclassification

■ The government next argues that plaintiff cannot be reimbursed for taxes withheld in past years because each SBP payment, at the time it was disbursed, was a "closed transaction." A closed transaction, according to the government, cannot be retroactively reclassified in such a way as to affect its taxability, if the transaction was unambiguous in character at the time it took place. Since the SBP payments were clearly taxable when they were paid to plaintiff, and since the transactions were closed, the government contends, the future conversion of those benefits into DIC payments cannot render those payments nontaxable.

The government's argument is without merit. Applicable case law demonstrates that taxable payments made through one program can be retroactively reclassified so as to render them nontaxable. In *Strickland v. Comm'r of Internal Revenue,* 540 F.2d 1196 (4th Cir.1976), a retired colonel claimed a reduction in his taxes as a result of a decision retroactively increasing the amount of disability compensation to which he was entitled. Disability benefits are nontaxable DVA-disbursed benefits under 38 U.S.C. § 5301(a)(1). The increase in disability payments retroactively converted some of his taxable retirement benefits to disability compensation. The IRS raised an argument similar to that made by the government here, that the benefits were paid as retirement income and not as disability benefits, and thus could not be retroactively recharacterized. The 4th Circuit disagreed, stating that "[s]ection 3010 [the predecessor to today's 38 U.S.C. § 5110] clearly contemplates retroactive disability awards, and we perceive no basis for treating such awards differently for tax purposes than present or prospective awards." *Strickland,* 540 F.2d at 1198 n. 1; *accord Sullivan v. United States,* 46 Fed.Cl. 480 (2000) (retroactive adjustment in plaintiff's disability rating converted taxable retirement benefits into nontaxable disability compensation for those years which fell inside the 3–year statute of limitation mandat-

ed by 26 U.S.C. § 6511(a)[10]). Thus, retroactively-awarded DVA-administered benefits can convert initially taxable compensation to a nontaxable form.

The only located case specifically addressing the retroactive conversion of SBP payments into DIC benefits is *Murphy v. United States*, 76 F.3d 374, 77 A.F.T.R.2d 96–632, 1996 WL 34657 (4th Cir.1996), an unpublished opinion. In *Murphy*, plaintiff sued to obtain a tax refund after she was awarded DIC benefits in 1991 retroactive to 1986, claiming that taxes withheld from her SBP payments during those years should be refunded. The 4th Circuit upheld the district court's dismissal of her claim for the years 1986–1988, which was rejected as barred by the 3–year statute of limitations provided in 26 U.S.C. § 6511(a). However, the years 1989–1991 were not at issue in the suit, because her refund claim for those years was recognized as meritorious. Brief for Appellant, p. 12. It is clear, therefore, that retroactive conversion of SBP payments to DIC benefits has the effect of rendering the converted benefits nontaxable, and parties can claim refunds for tax years falling within the 3–year statute of limitations.[11] Thus, the government's argument that SBP payments are closed transactions and thus cannot be recharacterized for tax purposes is without merit.

The government cites two cases to provide support for its position that SBP benefits cannot be recharacterized for tax purposes. The government first makes reference to *Burnet v. Logan*, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931), as authority for its argument that closed transactions cannot be altered by future events. *Burnet* dealt with a sale of stock to a company in exchange for cash plus a portion of the company's future sales. The IRS argued that the transaction should be taxed in the year in which it took place, based on an estimate of the value of the company's future sales. The seller con-

tended that she should owe no tax on the sales proceeds until she had actually realized a capital gain from the transaction. *Burnet* did not involve the retroactive recharacterization of a closed transaction. Rather, it addressed the question of whether a transaction whose value was contingent on future events could, in effect, be treated as a closed transaction. *Burnet* thus does not speak to the issue before the court.

The government cites *Claridge Apartments Co. v. Comm'r of Internal Revenue*, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944), to support its contention that "retroactivity is disfavored" and that "it is the ... function of the legislature" to discriminate between closed and pending transactions. However, at issue in *Claridge* was not the retroactive reclassification of benefits for tax purposes, but the retroactive application of an act of Congress. In *Claridge*, the Supreme Court addressed whether it was proper to give retroactive legal effect to a revision of the bankruptcy laws, enacted in order to address problems found in the preceding laws. The Court considered whether the act could properly be applied to one or more of the following categories of transactions: 1) those which were pending as of the date of passage; 2) future transactions as well as closed transactions as of the date of passage; and/or 3) all transactions from a date several years prior to the date of passage, whether closed or pending when the revision was enacted. The court concluded that, absent a clear statement by Congress that it had intended the revised laws to have retroactive effect, the change should not be applied retroactively to closed transactions. Since *Claridge* deals solely with retroactive application of a particular law and not with retroactive reclassification of benefits for tax purposes, it fails to provide support for the government's contention.

---

**10.** 26 U.S.C. § 6511(a) provides: "Claim for credit or refund of an overpayment of any tax imposed by this title ... shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such period expires the later ...."

**11.** It is undisputed that plaintiff's claims fall within the statute of limitations: she claims refunds for 1999 and 2000 in her February 6, 2002 letter and for 2001 in her October 14, 2003 letter.

## C. Whether Plaintiff Has Failed to Prove A Critical Element of her Case

The government next contends that plaintiff has failed to prove her entitlement to a tax refund because plaintiff has failed to show that her subsequent DIC payments have not effectively reimbursed her for the tax previously withheld under the SBP program. However, plaintiff is not required to make such a showing. Plaintiff has met her burden under summary judgment. She has proffered documentary evidence of facts which, unless disputed, would entitle her to a tax refund as a matter of law. It thus falls to the government to create an issue of fact sufficient to overcome plaintiff's showing. Furthermore, it is within the power of the government to produce documentation demonstrating that subsequent DIC payments have effectively reimbursed her for the tax withholdings in question. 28 U.S.C. § 520(a).[12] It has thus far failed to do so. Vague assertions regarding purported deficiencies in the movant's case are not sufficient to create an issue of fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The government's argument, without more, is thus insufficient to preclude summary judgment.

## D. Whether a Prior Pro Se Case Controls

Finally, the government presents the court with an unpublished opinion in a related case and recommends that the court follow it in deciding this case. The government refers this court to *Caba v. United States,* No. 99–4 T, 2001 U.S. Claims LEXIS 77 (Fed.Cl. Apr. 27, 2001), which involves a claim, made by a widow of a U.S. serviceman, for a refund of taxes withheld from her SBP benefits. Plaintiff in *Caba* presented several arguments in support of her claim, only one of which bears any similarity to the arguments presented in the instant case: she argued that her SBP payments had been retroactively converted into DIC payments. *Id.* at *7. The court in *Caba* denied plaintiff's claim.

However, while the court in *Caba* refused to accept plaintiff's retroactive conversion argument, it was not because it found the argument to be without merit. The court instead refused to consider the argument because the administrative decision converting her SBP payments into DIC payments occurred after plaintiff had filed her complaint. *Id.* at *14. Citing the "substantial variance" rule, the court noted that plaintiff was barred "from presenting claims ... that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Id.* at *13–14 (citing *Lockheed Martin Corp. v. United States,* 210 F.3d 1366, 1371 (Fed.Cir.2000)). In the case before the court, however, plaintiff has asserted from the outset that she is entitled to a refund based on the conversion of her SBP payments into DIC benefits, and thus the "substantial variance" rule is inapplicable here. Therefore, *Caba* offers no guidance regarding the issues presented by the instant case.

### *Conclusion*

For the reasons set forth above, plaintiff has established entitlement to a refund of the tax withholdings deducted from the SBP payments made to her, and therefore it is **ORDERED** that her cross-motion for summary judgment be **GRANTED**, and defendant's motion for summary judgment be **DENIED**. Final judgment shall be entered in the amount of $4,727.40, plus interest as provided by law. This value reflects the amount of tax withheld from plaintiff's SBP benefits from February 1, 1999, the effective date of her entitlement to DIC benefits, through the end of June 2001, when her SBP payments were discontinued.

---

**12.** 28 U.S.C. § 520(a) provides: "In suits against the United States in the United States Court of Federal Claims ... founded on a ... transaction with an executive department or military department, ... the Attorney General shall send to the department ... a printed copy of the petition filed by the claimant, with a request that the department ... furnish to the Attorney General all facts, circumstances, and evidence concerning the claim in the possession or knowledge of the department ...."